**MORGAN, LEWIS & BOCKIUS LLP**
(*A Pennsylvania Limited Liability Partnership*)
502 Carnegie Center
Princeton, NJ 08540-6241
Tel.   (609) 919-6641
By:    John McGahren, Esq.
       (john.mcgahren@morganlewis.com)

*Attorney for Plaintiff FXI, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FXI, Inc.,<br><br>          Plaintiff,<br><br>     v.<br><br>PMC, Inc.,<br><br>          Defendant. | Civil Action No.<br><br><br>COMPLAINT |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

FXI, Inc. ("FXI"), through the undersigned attorney, files this action for injunctive relief to enforce contractual indemnification pursuant to the terms of an Asset Purchase Agreement and for relief under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9607 ("CERCLA") and Section 58:10-23.11 of the New Jersey Spill Compensation and Control Act, N.J.S.A. § 58:10-23.11f(a)(2) ("Spill Act") for the recovery of response costs that FXI has expended to date and will expend in the future in response to releases and threatened releases of hazardous substances into the soil and groundwater at and under the property commonly known as 13 Manor Road in East Rutherford, New Jersey ("the Property").

**NATURE OF THE ACTION**

1. This is a civil action brought by FXI against Defendant PMC, Inc. ("PMC") for damages associated with breach of contractual indemnity obligations related to environmental liabilities. Due to PMC's failure to accept its indemnity obligations, Plaintiff must seek recovery of its response costs pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607 and contribution pursuant to Section 58:10-23.11f of the Spill Act, N.J.S.A. § 58:10-23.11f(a)(2).

2. CERCLA imposes liability on the current "owner or operator of a . . . facility" and "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(1)-(2). Plaintiff seeks to recover response costs from PMC as the former owner and operator of the Property at the time of disposal of hazardous substances. Plaintiff has incurred and will continue to incur necessary costs of response, in a manner consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300 *et seq.*, caused by releases and threatened releases of hazardous substances to soil and groundwater at and under the Property. Plaintiff also seeks a declaratory judgment on liability for future response costs in accordance with Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), that will be binding on any subsequent action or actions by FXI against PMC.

3. The Spill Act provides at N.J.S.A. § 58:10-23.11g(c) that "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred." Plaintiff seeks contribution from PMX pursuant to N.J.S.A. § 58:10-23.11f(a)(2), and a declaratory judgment on PMX's liability for future cleanup and removal costs pursuant to Section 58:10-23.11f(a)(2) of the Spill Act, N.J.S.A. § 58:10-

23.11f(a)(2) declaring, adjudging, and decreeing PMX is liable to Plaintiff for response costs or damages at the Property.

## PARTIES

4. Plaintiff, FXI, formerly known as Foamex Innovations Operating Company, is a private company organized under the laws of the State of Delaware with its principal place of business at 100 Matsonford Road, 5 Radnor Corporate Ctr. Ste. 300, Radnor, Pennsylvania, 19087.

5. Upon information and belief Defendant, PMC, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 12243 Branford Street, Sun Valley, California, 91352.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to CERCLA Section 113(b), 42 U.S.C. § 9613(b) and 28 U.S.C. § 1367.

7. Venue is proper in this district pursuant to CERCLA Section 113(b), 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) because the claims arose and the releases of hazardous substances occurred in the District of New Jersey.

## BACKGROUND

**PMC Owned and Operated the Property at the Time of Disposal of Hazardous Substances.**

8. The Property consists of an approximately 12.5-acre parcel of land occupied by a 198,000 square foot manufacturing building. PMC, as successor-in-interest to General Foam Corporation and, upon information and belief, GFC-East Rutherford, LLC, owned and operated its polyurethane products manufacturing business at the Property, which included the production, storage, and distribution of flexible foam products.

9. PMC conducted its polyurethane products manufacturing business on the Property

from 1984 to 2001, after which it continued to own the Property until 2006.

10. PMC's long-term foam manufacturing operations contributed to the release of hazardous substances at the Property.

**The Asset Purchase Agreement**

11. On July 6, 2001, PMC and Foamex L.P. ("Foamex") entered into an Asset Purchase Agreement ("Agreement"), whereby Foamex acquired interests and assets related to PMC's polyurethane products manufacturing business (the "Business").

12. Pursuant to Section 1.4(h) of the Agreement, PMC retained "all liabilities and obligations" . . .

> relating to the ownership or operation of the Business, before or after the Closing Date, and arising under Environmental Laws (as defined in Section 2.11(e)(i)) or the Uniform Fire Code or related in any way to the release or threatened release of hazardous Substances (as defined in Section 2.11(e)(ii)) at any location, including all liabilities and obligations relating to compliance with the New Jersey Industrial Site Recovery Act.

13. Pursuant to Section 1.5(b) of the Agreement, on July 25, 2001, Foamex entered into a lease agreement (the "Lease") with a PMC subsidiary, GRC-East Rutherford, LLC, for the Property, together with all property thereon and all easements, licenses, rights and appurtenances relating thereto, which was primarily used or held for use in connection with the Business and was defined under the Agreement as the "Leased Real Property." Pursuant to Section 4.12 of the Agreement, the Lease is a "Collateral Agreement."

14. Pursuant to Section 2.11 of the Agreement, PMC represented and warranted to Foamex that the Business was in compliance in all material respects with all applicable "Environmental Laws" and that there had been no releases, spills. or discharges of "Hazardous Substances" on or underneath the Property.

15. Pursuant to Section 2.11(e)(i) of the Agreement, "Environmental Laws" was

defined as:

> [A]ll federal, state, local and foreign laws, regulations, rules and ordinances relating to pollution or protection of human health (as it relates to environmental matters, such as toxic tort or human exposure matters, but not as it relates to worker safety or Occupational Safety and Health Act matters, which are covered elsewhere in this Agreement), or the environment, including, without limitation, laws relating to releases or threatened releases of Hazardous Substances into the environment (including, without limitation, ambient air, surface water, groundwater, land, surface and subsurface strata).

16. Pursuant to Section 2.11(e)(ii) of the Agreement, "Hazardous Substances" was defined as:

> [A]ny chemicals, materials or substances defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "hazardous constituents," "restricted hazardous materials," "extremely hazardous substances," "toxic substances," "contaminants," "pollutants," "toxic pollutants," or words of similar meaning and regulatory effect under any applicable Environmental Law including, without limitation, petroleum, petroleum products, polychlorinated biphenyls and asbestos.

17. Pursuant to Section 8.9(a) of the Agreement, PMC agreed to "defend, indemnify and hold harmless" Foamex from and against any and all liabilities, including attorneys' fees resulting from or arising out of, in relevant part, "any inaccuracy of any representation or warranty" (Section 8.9(a)(i)) *and* "any and all Retained Liabilities" (Section 8.9(a)(iii)).

18. Pursuant to Section 8.9(f)(iii) of the Agreement, PMC's representations, warranties, covenants, and agreements with respect to environmental compliance at the Property survive the closing date indefinitely.

**Section 363 Asset Sale to MP Foam DIP LLC**

19. Foamex entered into an Asset Sale with MP Foam DIP LLC under Section 363 of the US Bankruptcy Code, 11 U.S.C. § 363, ("363 Asset Sale"). By Order of the United States Bankruptcy Court for the District of Delaware in the matter captioned *In re: Foamex*

*International Inc., et al.*, 09-10560 (Bankr. D. Del.), MP Foam DIP LLC, and its successors and assigns, were deemed to be fully and irrevocably vested in all right, title, and interest to the Agreement. (*Order (A) Authorizing and Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving he Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief)*. Any provisions of the Agreement that prohibit its assignment were deemed void and of no force and effect. *Id.* at ¶ 14.

20. Pursuant to Section 12.3 of the 363 Asset Sale Agreement and Paragraph 5 of the Order authorizing and approving the sale, MP Foam DIP LLC assigned to FXI all rights, title, and interest to the Agreement.

**The Industrial Site Recovery Act**

21. The Industrial Site Recovery Act ("ISRA") (N.J.S.A. 13:1K and N.J.A.C. 7:26B), which is implemented by the New Jersey Department of Environmental Protection ("NJDEP"), imposes certain preconditions on the closure of "industrial establishments" involved in the generation, manufacture, refining, transportation, treatment, storage, handling or disposal of hazardous substances or wastes. Any person who owns an industrial establishment, owns the real property of an industrial establishment, or is the operator of an industrial establishment must comply with ISRA.

22. ISRA requires owners or operators of an industrial establishment to notify the NJDEP upon the closing of operations of an industrial establishment. The owner or operator must then conduct a remediation in accordance with the Technical Requirements for Site Remediation (N.J.A.C. 7:26E), including a Preliminary Assessment ("PA") to identify potential Areas of Concern (AOCs).

23. If the PA finds AOCs that warrant investigation, then a Site Investigation ("SI") must be performed to determine if any contaminants are present above any applicable remediation standards.

24. If there is contamination documented in the SI, the owner or operator must conduct a Remedial Investigation ("RI") to determine the nature and extent of contamination. The next step is the proposal of a Remedial Action Workplan ("RAW") detailing the measures necessary to remediate contaminated property to the applicable remediation standard.

25. The owner or operator may submit a Negative Declaration certification when there has been no discharges of hazardous substances or wastes on the property or that any such discharges were cleaned up to the satisfaction of the NJDEP. The NJDEP approves the Negative Declaration by issuance of a No Further Action Letter.

**Response Activities at the Property**

26. The cessation of FXI's foam manufacturing operations at the Property on February 18, 2022, triggered the requirements of ISRA. The PA identified a total of 35 AOCs at the Property, with 14 requiring additional investigation.

27. The SI/RI identified areas of soil and groundwater contamination. Currently, the contaminants of concern (COCs) detected in site groundwater samples that exceed their NJDEP Groundwater Quality Standards (GQS) include the chlorinated volatile organic compounds (VOCs): 1,1-Dichloroethene (DCE), 1,1,1-Trichloroethane (TCA), 1,2-Dibromo-3-chloropropane, 1,2-Dibromoethane, Semi-VOC 1,4 Dioxane (1,4-D), and Per- and Polyfluorinated Substances (PFAS) compounds Perfluorooctanoic acid (PFOA), Perfluorooctane sulfonic acid (PFOS), and Perfluorononanoic acid (PFNA).

28. The obligations triggered by ISRA identified releases and/or threatened releases

of hazardous substances at or from the Property caused by PMC. Plaintiff has incurred and will continue to incur response costs, including costs for removal and/or remedial actions as defined in Section 101(23)-(25) of CERCLA, 42 U.S.C. § 9601(23)-(25). The costs Plaintiff has incurred and will incur are necessary to respond to releases and threatened releases of hazardous substances at the Property in compliance with ISRA and are consistent with the NCP.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

29. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 28 as if fully set forth herein.

30. PMC retained all liabilities and obligations "relating to the ownership or operation of the Business, *before or after the Closing Date*, and arising under Environmental Laws . . . or related in any way to the release or threatened release of hazardous [s]ubstances . . . at *[the Property]*." Section 1.4(h).

31. Pursuant to Section 2.11 of the Agreement, PMC represented and warranted that it operated the Business "in compliance in all material respects with all applicable Environmental Laws" (Section 2.11(a)), and that "there have been no releases, spills or discharges of Hazardous Substances . . . on or underneath [the Property]," (Section 2.11(c)).

32. The contamination at the Property is attributable to releases, spills, and discharges during PMC's ownership and operation of the Property prior to the Closing Date.

33. PMC agreed "to defend, indemnify and hold harmless" Foamex from and against any and all liabilities, including attorneys' fees, resulting from or arising out of, in relevant part, "any inaccuracy of any representation or warranty" (Section 8.9(a)(i)) *and* "any and all Retained Liabilities" (Section 8.9(a)(iii)).

34. Pursuant to Section 8.9(f)(iii) of the Agreement, PMC's indemnity obligations with respect to environmental compliance survive indefinitely.

35. Pursuant to the 363 Asset Sale Agreement and Paragraph 5 of the Order authorizing and approving the sale, MP Foam DIP LLC acquired and assigned to FXI all rights, title, and interest to the Agreement.

36. The inaccuracy in PMC's representation and warranty as to the absence of contamination at the Property and PMC's failure to comply with the applicable environmental laws has subjected FXI to certain liabilities and obligations.

37. PMC has failed to comply with its obligation to defend, indemnify, and hold harmless FXI under the terms of the Agreement.

38. PMC's refusal to defend, indemnify and hold harmless FXI constitutes a material breach of the Agreement.

39. PMC is entitled to specific performance by way of injunctive relief to enforce PMC's obligation to indemnify FXI with respect to environmental compliance at the Property.

## SECOND CLAIM FOR RELIEF
### (Cost Recovery under CERCLA Section 107, 42 U.S.C. § 9607)

40. FXI repeats and realleges the allegations contained in Paragraphs 1 through 39 as if fully set forth herein.

41. PMC is a "person" as that term is defined in 42 U.S.C. § 9601(21).

42. The Property is a "facility" as that term is defined in 42 U.S.C. § 9601(9).

43. PMC is and has been an "owner" and "operator" of the Property as those terms are defined in 42 U.S.C. §§ 9607(a)(1)-(2).

44. VOCs, including 1,4-dioxane and 1,1-dichloroethane are "hazardous substances,"

within the meaning of CERCLA Sections 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a).

45. The presence of these Hazardous Substances at the Property constitutes a release or threatened release of Hazardous Substances as defined in 42 U.S.C. § 9601(22).

46. PMC owned and operated the Property at the time hazardous substances were disposed of on the Property and that have contributed to the concentrations of the COCs that are present in soil and groundwater at the Property and exceed their applicable NJDEP GQS.

47. PMC's release and/or threatened release of hazardous substances at or from the Property has caused and will continue to cause Plaintiff to incur response costs, including costs for removal and/or remedial actions as defined in Section 101(23)-(25) of CERCLA, 42 U.S.C. § 9601(23)-(25).

48. The costs FXI has incurred and will incur are necessary to respond to releases and threatened releases of hazardous substances at the Property in compliance with ISRA and are consistent with the NCP.

49. PMC is a liable party in this action under 42 U.S.C. §§ 9607(a)(1) and (2).

50. Pursuant to Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), Plaintiff is entitled to cost recovery from PMC for the response costs incurred and to be incurred by Plaintiff.

**THIRD CLAIM FOR RELIEF**
**(Declaratory Relief under CERCLA § 113(g))**

51. FXI repeats and realleges the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

52. An actual controversy exists within the meaning of 28 U.S.C. § 2201 between

FXI and PMC concerning their respective rights and obligations for costs and liabilities FXI may incur as a result of releases or threatened releases of hazardous substances at and from the Property.

53. FXI seeks a declaratory judgement against PMC under 42 U.S.C. § 9613(g)(2). PMC is liable for some or all amount(s) FXI may or will incur as a result of any release or threatened release of hazardous substances at the Property.

### **FOURTH CLAIM FOR RELIEF**

**(Contribution under the Spill Act)**

54. FXI repeats and realleges the allegations contained in Paragraphs 1 through 53 as if fully set forth herein.

55. The Spill Act provides at N.J.S.A. 58:10-23.11g(c) that "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred."

56. PMC is a "person" as defined in the Spill Act, N.J.S.A. 58:10-23.11b.

57. The VOCs, including 1,4-dioxane and 1,1-dichloroethane, and PFAS compounds discharged by PMC are "hazardous substances" as defined in the Spill Act, N.J.S.A. 58:10-23.11b.

58. The release of VOCs, including 1,4-dioxane and 1,1-dichloroethane, and PFAS compounds at the Property constitutes a "discharge" as defined in the Spill Act, N.J.S.A. 58:10-23.11b.

59. PMC is a "discharger" or a "person in any way responsible for a discharged hazardous substance" within the meaning of Spill Act Section 58:10-23.11f(a)(2), N.J.S.A. §

58:10-23.11f(a)(2).

60. The Spill Act, N.J.S.A. 58:10-23.11f(a)(2), provides that "[w]henever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of the cleanup."

61. Pursuant to the Spill Act, N.J.S.A. 58:10-23.11f(a)(2), FXI has incurred and will continue to incur cleanup and removal costs as a result of the discharge of hazardous substances by PMC at the Property.

62. Pursuant to the Spill Act, N.J.S.A. 58:10-23.11g(c), PMC, as the discharger of hazardous substances, is strictly liable, jointly and severally, for all cleanup and removal costs incurred and to be incurred by Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, FXI respectfully request that this Court enter judgement in its favor and against PMC as follows:

1. Enter an Order enforcing PMC's obligation to indemnify FXI from and against all liabilities, obligations, and losses, including reasonable attorneys' fees and out-of-pocket-expenses, resulting from environmental compliance at the Property.

2. Enter judgment against PMC, jointly and severally, for all unreimbursed response costs incurred by FXI in connection with environmental compliance at the Property.

3. Enter judgment under 42 U.S.C. § 9607 against PMC, finding that PMC is jointly and severally liable under 42 U.S.C. § 9607(a)(4)(B) for all response costs

incurred by FXI in connection with the release of Hazardous Substances at or from the Property.

4. Enter a judgment under the Spill Act, N.J.S.A. 58:10-2311f(a)(2), finding that PMC is jointly and severally liable under the Spill Act for all cleanup and removal costs and damages incurred as a result of the discharge of Hazardous Substances at or from the Property.

5. Enter a declaratory judgment that PMC is a liable party under 42 U.S.C. § 9607(a)(1) and (a)(2) for releases at the Property, and that PMC is liable for any and all response costs which may be incurred in the future.

6. Enter a declaratory judgment pursuant to the Spill Act against PMC and in favor of FXI declaring that PMC is liable to FXI for response costs or damages at the Property, pursuant to Section 58:10-23.11f(a)(2) of the Spill Act, N.J.S.A. § 58:10-23.11f(a)(2), such judgment to be binding on any subsequent action or actions to recover further response costs or damages.

7. Enter an order awarding FXI litigation expenses and costs, including reasonable attorney's fees and expert fees, as permitted by law.

8. Enter an order awarding Plaintiff interest at the maximum legal rate on any and all damages from the earliest date permitted by law.

9. Grant such other and further relief as the Court deems just and proper.

Dated: April 8, 2024

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

_____
John McGahren
502 Carnegie Center
Princeton, NJ 08540-6241
Telephone: (609) 919-6641
john.mcgahren@morganlewis.com

*Attorney for Plaintiff FXI, Inc.*

## **LOCAL RULE 11.2 CERTIFICATION**

  I, John McGahren, the undersigned attorney of record for Plaintiff FXI, Inc., do hereby certify to my own knowledge and based upon information available to me, the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

Date: April 8, 2024

                          John McGahren, Esq.