NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FXI, INC., <br><br> Plaintiff, <br><br> v. <br><br> PMC, INC., <br><br> Defendant. | Civil Action No.: 24-04661 <br><br> **OPINION AND ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court on the motion to dismiss for lack of jurisdiction (ECF No. 9, the "Motion") plaintiff FXI, Inc.'s ("FXI" or "Plaintiff") complaint (ECF No. 1, "Complaint" or "Compl.") filed by defendant PMC, Inc. ("PMC" or "Defendant"). Plaintiff opposed Defendant's motion (ECF No. 11, "Opp."), and Defendant replied in support (ECF No. 12, "Repl."). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion is **DENIED**.

**I.     BACKGROUND**

   **A.  The Transaction**

On July 6, 2001, PMC and non-party Foamex L.P. ("Foamex") entered into an Asset Purchase Agreement (the "APA"), whereby Foamex acquired interests and assets related to PMC's polyurethane products manufacturing business (the "Business"). Compl. ¶ 11. On the closing date of that transaction, July 25, 2001, Foamex agreed to lease a property (the "Lease") located at 13 Manor Road in East Rutherford, New York (the "Property") from PMC subsidiary GRC-East Rutherford LLC. *Id.* at ¶ 13. The Lease was defined within APA Section 4.12 as a "Collateral Agreement." *Id.* The Property forms the subject of this dispute.

### B. The Dispute

Later, buyer Foamex filed for bankruptcy and participated in a court-approved 11 U.S.C. § 363 asset sale with MP Foam DIP LLC. Compl. ¶ 19. Thereafter, MP Foam DIP LLC was vested with all rights, title, and interest to the APA. *See id*. MP Foam DIP LLC subsequently assigned all those rights, title, and interest to Plaintiff FXI. *Id.* at ¶ 20.

FXI undertook business operations at the Property until February 18, 2022, after which it allegedly performed an environmental investigation of the Property under New Jersey's Industrial Site Recovery Act ("ISRA"), N.J.S.A. §§ 13:1K, et seq. and N.J.A.C. 7:26B. *Id.* at ¶ 26. The investigation allegedly uncovered that PMC had not delivered the Property free of hazardous materials. *Id.* at ¶ 27. Plaintiff alleges it detected contaminants exceeding NJDEP Groundwater Quality Standards "includ[ing] the chlorinated volatile organic compounds (VOCs): 1,1-Dichloroethene (DCE), 1,1,1-Trichloroethane (TCA), 1,2-Dibromo-3- chloropropane, 1,2-Dibromoethane, Semi-VOC 1,4 Dioxane (1,4-D), and Per- and Polyfluorinated Substances (PFAS) compounds Perfluorooctanoic acid (PFOA), Perfluorooctane sulfonic acid (PFOS), and Perfluorononanoic acid (PFNA)." *Id*.

FXI then filed this action for injunctive relief to enforce contractual indemnification and for relief under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9607 ("CERCLA") and Section 58:10-23.11 of the New Jersey Spill Compensation and Control Act, N.J.S.A. § 58:10-23.11f(a)(2) ("Spill Act") for the recovery of response costs related to releases and threatened releases of hazardous substances into the soil and groundwater at and under the Property. *See* Compl. ¶¶ 29-62.

### C. The Contract

The core of the dispute at this stage of the litigation is whether FXI can maintain its CERCLA claim in light of the indemnification provision of the APA—Section 8.9.[1] Pursuant to Section 8.9(a), PMC agreed to "'defend, indemnify and hold harmless' Foamex from and against any and all liabilities, including attorneys' fees resulting from or arising out of, in relevant part, 'any inaccuracy of any representation or warranty' and 'any and all Retained Liabilities.'" Compl. ¶ 17 (citing APA §§ 8.9(a)(i) and (iii)). In Section 8.9(e), the key provision at issue in the Motion, the parties agreed to limit the remedies available to them for certain breaches of the APA. Section 8.9(e) of the APA, titled, "Remedies Exclusive; Limitations on Remedies in [the APA] and the Collateral Agreements," provides in full:

> The rights and remedies provided in this Section 8.9 *shall be the sole and exclusive remedy for any breach of or inaccuracy in any representation or warranty or any breach of any covenant or agreement contained in this Agreement*, in any Seller Certificate, in any Purchaser Certificate or in any Collateral Agreement, provided that nothing herein shall limit the rights of either party to seek and obtain injunctive relief to specifically enforce the other party's obligations.

ECF No. 9-2, Ex. A (first emphasis added, second in original).

Defendant reads this provision to mean that "the *only* causes of action available to either [party] with regard to the assets transferred by the APA were contractual claims under the APA." Motion at 1. Plaintiff, on the other hand, argues that "nothing in the plain language of Section

---

[1] The APA was attached as Exhibit A to the Declaration of John J. McAleese, Esq. in support of the Motion. ECF No. 9-2, Ex. A. Although not attached as an exhibit to the Complaint, Plaintiff cites extensively to the APA throughout its Complaint, *see* Compl. ¶¶ 12-18, 30-35, and the document is integral to the claims asserted. Accordingly, the APA is a "document integral to or explicitly relied upon in the complaint," which the Court can thus "consider without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and citations omitted); *see also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (internal quotations omitted).

8.9(e) [] precludes FXI from pursuing legally distinct environmental claims in addition to its indemnification rights for breach of the environmental warranties under the APA." Opp. at 6.

FXI seeks judgment in its favor on four separate causes of action, including two based on CERCLA and two based on state law: (1) Breach of Contract; (2) Cost Recovery under Section 107 of CERCLA, 42 U.S.C. § 9607; (3) Declaratory Relief under Section 113(g) of CERCLA, 42 U.S.C. § 9613(g); and (4) Contribution under the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10-23.11. *See* Compl. ¶¶ 29-62. Defendant argues that the Court should deem Plaintiff's CERCLA claims barred by the APA, which would eliminate federal question jurisdiction and, in turn, deprive the Court of subject matter jurisdiction over the remaining state law claims. *See* Motion at 2.

## II.   **LEGAL STANDARD**

A court must grant a motion to dismiss under Rule 12(b)(1) if it determines that it lacks subject matter jurisdiction over a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)). Further, when dealing with a facial 12(b)(1) challenge, like the one presented in this case, the Court looks only at the allegations in the pleadings and does so in the light most favorable to the non-moving party. *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

**III.     DISCUSSION**

Plaintiff's CERCLA claim would trigger federal question jurisdiction, and thus supplemental jurisdiction over the state law claims that are part of the same controversy presented in the Complaint. *See Taylor v. BMW of N. Am., LLC*, No. 20-cv-1994, 2021 WL 1186777 at * (D.N.J. Mar. 29, 2021) ("The presence of a valid federal-law claim would give this court a jurisdictional toehold for supplemental jurisdiction over related state law claims that are deemed to be part of the same case or controversy."). Accordingly, the central inquiry to determine whether this Court has subject matter jurisdiction over this matter is whether Section 8.9(e) of the APA bars Plaintiff from asserting its CERCLA claim.

Although Defendant argues that the APA limits Plaintiff's rights and remedies to contractual indemnification, the APA only limits Plaintiff's rights and remedies as to certain enumerated breaches. Defendant asserts that the APA "provides that contractual indemnification is the sole and exclusive remedy available to FXI with regard to the allegations contained in the Complaint." Motion at 10. As discussed above, Section 8.9(e) provides that "[t]he rights and remedies provided in this Section 8.9 shall be the sole and exclusive remedy *for any breach of or inaccuracy in any representation or warranty or any breach of any covenant or agreement contained in this Agreement. . . .*" ECF No. 9-2, Ex. A (emphasis added). This language limits Plaintiff to contractual claims for indemnification, but only for specifically enumerated breaches: (1) breach of (or inaccuracy in) any representation or warranty under the APA, and (2) breach of any covenant or agreement contained in the APA. In other words, applying the plain and ordinary meaning of the language in Section 8.9(e), as required by Delaware law,[3] the parties agreed that

---

[3] *See Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195-96 (Del. 1992). The Court notes that the parties agreed in Section 8.8 that the APA "shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State

5

contractual indemnification is the exclusive mechanism to pursue a claim that falls within the scope of the enumerated breaches. Those enumerated breaches do not include CERCLA violations.

Had the parties intended to exclude claims beyond these enumerated breaches—as Defendant argues—Delaware law requires them to use more specific and explicit language. *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 466 (D. Del. 2011) ("Delaware law requires that parties intending to make indemnification the only remedy available between them to do so explicitly and unequivocally.") (citations omitted); *cf. Merck & Co. v. Bayer AG*, No. 2021-0838-NAC, 2023 WL 2751590, at *4 (Del. Ch. Apr. 3, 2023), *aff'd*, 308 A.3d 1190 (Del. 2023) (Stock and Asset Purchase Agreement exclusive remedy provision broadly included "all matters arising under or in connection this Agreement . . . including, without limitation . . . with respect to any matters or claims under Environmental Laws").

In *Silgan White Cap Americas, LLC v. Alcoa Closure Systems*, the court confronted this same issue under Delaware law—whether contractual indemnification was the sole and exclusive remedy for a dispute between parties to an Asset Purchase Agreement, thereby barring the plaintiff from bringing CERCLA claims. No. 08-cv-939, 2009 WL 1177090 (W.D. Pa., Apr. 29, 2009). In that case, the court held that for an agreement to create an exclusive remedy of indemnification under Delaware law—precluding CERCLA and all other claims—there must be a "clear expression of the parties' intention" to exclude such claims in the agreement. *Id.* at *10. Like the provision at issue in the present matter, the agreement at issue in *Silgan* provided only a specific remedy for *breach*. *Id.* (applying the plain and ordinary meaning of the agreement language, the Court held that "the parties agreed that to the extent that *an indemnification claim* was made by

---

of Delaware applicable hereto." APA § 8.8 (titled "Governing Law"). Both parties agree that the Court should enforce this choice of law provision. *See* Motion at 7-8; Opp. at 5, n. 2. Accordingly, Delaware state law governs the interpretation and application of the APA in this case.

6

either party, it would be governed by the specific terms and conditions set forth in [the agreement]") (emphasis in original). Because the agreement lacked the specific and clear intention to exclude remedies beyond those enumerated in the agreement, the court found that the agreement did not "expressly preclude Silgan from pursuing any other remedies, including the CERCLA claims advanced in this action." *Id.*

Indeed, the parties in the present matter failed to include an explicit waiver of other rights and remedies under environmental law in Section 8.9(e). *Cf. Merck & Co.*, 2023 WL 2751590, at *4 (buyer affirmatively waived and unconditionally released seller from "rights and remedies . . . under any Environmental Law, including, without limitation, any claims for contribution under CERCLA[.]"). Nor did they include a broad waiver of all rights and remedies with respect to any matter related to the transaction at issue. *Cf. ITW Glob. Invs. Inc.*, 2017 WL 1040711, at *4 (parties waived "all other rights and remedies *with respect to any matter in any way relating to this Agreement or arising in connection herewith*") (emphasis added). Instead, the provision mentions only rights and remedies related to the enumerated breaches.

As such, at this juncture, Plaintiff's CERCLA claim survives and establishes federal question jurisdiction pursuant to 28 U.S.C. § 1331—which in turn triggers supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(a). *See Falcone v. Dickstein, et al.*, No. 22-cv-921, 2024 WL 4839779, at *5 (D.N.J. Nov. 20, 2024) ("Where a federal court has original jurisdiction over certain claims, it also has supplemental jurisdiction over all other related claims that form part of the 'same case or controversy' under Article III of the United States Constitution.")

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court denies Defendant's motion to dismiss.

**Accordingly, IT IS** on this 19th day of December, 2024,

**ORDERED** that Defendant's motion to dismiss (ECF No. 9) is **DENIED**.

**SO ORDERED.**

*/s/ Claire C. Cecchi*
_____
**CLAIRE C. CECCHI, U.S.D.J.**
